**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **OSBY CORTEZ SCOTT,** | **CASE NO. 4:10CV2722** |
| Petitioner, | **JUDGE JACK ZOUHARY** |
| v. | **MAGISTRATE JUDGE GREG WHITE** |
| **RICH GANSHEIMER, Warden,** | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner, Osby Cortez Scott ("Scott"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Scott*, Trumbull County Court of Common Pleas Case No. 02CR234. Scott filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 2, 2010. On May 6, 2011, Warden Rich Gansheimer ("Respondent") filed his Answer/Return of Writ. (Doc. No. 9.) The Court allowed Scott until August 12, 2011, to file his Traverse.[1] (Doc. No. 16 & Order dtd. Jul. 12, 2011.) On August 11, 2011, Scott filed a Motion for Leave to Amend his Petition with a First Supplemental Amended Petition attached. (Doc. Nos. 18, 18-1.) On August 17, 2011, Respondent filed an opposition to the Motion to Amend. (Doc. No. 19.) On August 23, 2011, Scott filed his untimely Traverse.[2] (Doc. No. 20.) For reasons set forth in detail below, it is recommended that Scott's Motion for Leave to Amend his Petition be denied and the Petition be dismissed as time-barred.

**I. Procedural History**

---

[1] Scott filed several motions already ruled upon by the Court. He requested appointment of counsel, which was denied. (Doc. Nos. 8, 16.) He also moved for an order compelling the transcript of the suppression hearing as well as a request for an evidentiary hearing, which were denied without prejudice. *Id.*

[2] As Scott's Traverse is undated, the Court cannot determine whether the mailbox rule is applicable.

**A.     Conviction**

On April 15, 2002, the Trumbull County Grand Jury charged Scott as follows:

Count 1: Aggravated Burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11(A)(1) & (B);

Count 2: Robbery in violation of O.R.C. § 2911.02(A)(2) & (B);

Count 3: Kidnapping in violation of O.R.C. § 2905.01(A)(2) & (C);

Count 4: Grand Theft of a Motor Vehicle in violation of O.R.C. § 2913.02(A)(1) & (B)(1) & (5);

Count 5: Failure to Comply with Order or Signal of Police Officer in violation of O.R.C. § 2921.331(B) & (C)(1) & (5)(a)(ii); and,

Count 6: Burglary in violation of O.R.C. § 2911.12(A)(1) & (C).

(Doc. No. 9-1, Exh. 1.)

Scott, represented by counsel, pled guilty to Aggravated Burglary, Burglary, and Failure to Comply with Order or Signal of Police Officer. *Id*. at Exh. 3. On February 12, 2003, the trial court imposed the prison sentence of 12 years, previously agreed upon by Scott and the government. *Id*. at Exh. 4. Subsequently, Counts 2, 3, and 4 were dismissed. *Id*. at Exh. 5.

**B.     Delayed Direct Appeal**

On December 1, 2003, Scott, *pro se*, filed a motion for delayed appeal with the Court of Appeals for the Eleventh Appellate District ("state appellate court"). (Doc. No. 9-1, Exhs. 6 & 7.) The court allowed the appeal. With the assistance of counsel, Scott raised a single assignment of error: "The trial court erred by accepting a guilty plea without first determining whether the appellant understood the effect of the plea." *Id*. at Exh. 9. On February 22, 2005, the court affirmed Scott's conviction. *Id*. at Exh. 11.

On May 2, 2005, Scott filed a delayed notice of appeal with the Ohio Supreme Court. *Id*. at Exhs. 12, 13. After his delayed appeal was allowed, Scott raised the same proposition of law as before the state appellate court. *Id*. at Exh. 15. On October 26, 2005, the appeal was dismissed as not involving any substantial constitutional question. *Id.* at Exh. 18.

**C.     App. R. 26(B) Application for Reopening**

Meanwhile, on April 26, 2005, Scott filed an Ohio App. R. 26(B) application to reopen,

2

asserting that his appellate counsel was ineffective for failing to challenge his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id*. at Exh. 44. Scott further claimed that, despite his jointly recommended twelve-year sentence, he "did not waive his right to have a jury to determine his sentences." *Id.* He also asserted that his appellate counsel failed to challenge his unlawful consecutive sentences. *Id*. On June 15, 2005, the motion was denied as meritless. *Id*. at Exh. 47. No further appeal was taken.

### D. Post-conviction Relief - Motion under Ohio Crim R. 47

On October 10, 2006, Scott, *pro se*, filed a "motion to vacate his sentence and conviction . . . pursuant to Criminal Rule 47" asserting that the plea agreement was "void at common law" because the prosecutor, with "malicious intent," committed a fraud by convincing the court to run his sentences consecutively when they were allied offenses. *Id*. at Exh. 19. He also raised issues about his consecutive sentence under *Blakely v. Washington,* 542 U.S. 296 (2004)*, United States v. Booker,* 543 U.S. 220 (2005), and *Apprendi*. *Id*. Although the state filed a responsive brief (including a draft judgment entry for the court (*id*. at Exh. 20 at 142-143)), the record reflects that the motion was not ruled upon.[3]

Nonetheless, Scott, *pro se*, filed a notice of appeal to the state appellate court, which was dismissed on January 22, 2007, as premature. *Id*. at Exhs. 21, 23. No further appeal was taken.

### E. Post-conviction Relief – Common Law Motion to Vacate or Set Aside Sentence

On December 31, 2008, Scott, *pro se*, filed a "common law motion to vacate or set aside void judgment" claiming that the trial court lacked subject matter jurisdiction as the indictment for robbery (which was dismissed) failed to allege a *mens rea* element. *Id*. at Exh. 24. On February 18, 2009, the court, in a single sentence, denied the motion. *Id*. at Exh. 25.

---

[3]As Respondent indicates in footnote 2 of the Return of Writ, Ohio courts have held that Rule 47 motions to vacate and/or correct sentences based on *Blakely* were deemed postconviction petitions subject to statutory timeliness requirements, and that even if such motions were timely filed, they were summarily dismissed in that sentencing issues were barred by *res judicata*, and further, Rule 47 provided no authority to seek the requested relief. *See, e.g., State v. Payne*, 2007 Ohio 4594, 2007 WL 2505486 (Ohio Ct. App., Franklin Co. Sep. 6, 2007). (Doc. No. 9 at 4.)

On September 16, 2009, Scott filed a motion for a delayed appeal in the state appellate court. *Id*. at Exhs. 26 & 28. After the appeal was allowed, Scott raised the following assignment of error:

> 1. Trial court abused its discretion and erred in its finding by dismissing defendant-appellant's common law motion to vacate or set aside void judgment, trial court lacked jurisdiction of subject matter upon which judgment was rendered.

*Id*. at Exh. 29. On June 1, 2010, the state appellate court affirmed the dismissal of the post-conviction petition. *Id*. at Exh. 31.

On August 23, 2010, Scott, *pro se*, filed a motion for delayed appeal to the Ohio Supreme Court. *Id*. at Exh. 33. On October 13, 2010, the motion was denied and the case was dismissed. *Id.* at Exh. 34.

### F. Civ. R. 60(B) Motion for Relief from Judgment

During the pendency of Scott's post-conviction proceedings, on August 25, 2008, he filed an Ohio Rule 60(B) "motion for relief from judgment to correct an obvious error by the court." *Id*. at Exh. 35. Scott again attempted to challenge the dismissed charge of robbery for failing to contain the *mens rea* element. *Id*. On October 23, 2008, the petition was denied as untimely. *Id*. at Exh. 38. No further appeal was taken.

### F. Successive Application for Post-Conviction Relief

On January 4, 2011, Scott, *pro se*, filed an application for post-conviction relief pursuant to O.R.C. § 2953 alleging ineffective assistance of trial counsel for (1) failing to conduct pre-trial investigation, to request discovery of evidence and to uncover the defective indictment; (2) instructing Scott to plead guilty to a defective indictment lacking the *mens rea* element resulting in a double jeopardy violation; (3) failing to investigate and uncover racial discrimination in the grand jury selection; and, (4) failing to obtain necessary eyewitness and expert testimony. *Id*. at Exh. 39. On February 18, 2011, the court denied Scott's application as both untimely and meritless. *Id.* at Exh. 42.

On March 3, 2011, Scott, *pro se*, timely filed a notice of appeal with the state appellate court. *Id*. at Exh. 43. This appeal is still pending.

### H. Federal Habeas Petition

In a Petition for Writ of Habeas Corpus signed by Scott on November 22, 2010, and filed with the Court on December 2, 2010, Scott asserted the following grounds for relief:

> **GROUND ONE**: Petitioner was denied Due Process and Equal Protection under the 5th, 6th and 14th Amendments to the United States Constitution.
>
> **Supporting Facts**: Petitioner's indictment lacked *mens rea* of the offense charged. Petitioner did not receive proper notification of charge and element of the offence was not explained to petitioner prior to entering guilty plea.

(Doc. No. 1.)

### I. Motion for Leave to Amend Petition

Scott seeks to add the following two grounds to his Petition:

> **GROUND [TWO]**: Fourteenth Amendment to the United States Constitution.
>
> **Supporting Facts**: Mr. Scott was denied due process of law and equal protection where the State court failed to provide "full and fair" adjudication of Scott's Federal Constitutional injury-evidence dehor the record that Counsel's performance was defective.
>
> **GROUND [THREE]**: Sixth Amendment violations:
>
> **Supporting Facts**: Petitioner was denied due process of law when the trial court denied motion for grand jury transcript based on the "particularized heed" [sic] *ie*. Racial discrimination in the grand jury selection, without legal reasoning.

(Doc. No. 18-1.) Scott notes that these issues are currently before the state appellate court. *State v. Scott*, Trumbull County App. No. 2011 TR 00027.

A motion to amend a habeas petition is governed by Rule 15(a) of the Federal Rules of Civil Procedure. See 28 U.S.C. § 2242; *Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir. 1978); *Ahmed v. Hall*, 2011 WL 2970945, *1 (N.D. Ohio Jul. 20, 2011). Although the Court is directed to grant leave to amend freely, the right to amend is not unlimited. The Court has discretion to deny leave to amend a habeas petition when the amendment would be futile, *i.e.*, if it could not withstand a motion to dismiss under Rule 12(b)(6). *See Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001); *Hoover v. Langston Equip. Associates.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Souffrance v. Warden, Lebanon Correctional Inst.*, 2011 WL 463096, *1 (S.D. Ohio Feb. 4, 2011).

"Habeas corpus is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction. Because of this, the petitioner generally bears the burden of proof throughout the habeas proceeding." *Ahmed v. Hall*, 2011 WL 2970945 *2 (quoting Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990)).

Respondent argues that Scott's Petition is time-barred making the issue of amendment moot.

## II. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

### A. One-Year Limitation

Respondent's contention is that Scott's conviction became final on January 24, 2006,

ninety days after the Supreme Court of Ohio denied his delayed direct appeal.[4] Scott's AEDPA one-year limitation period began the following day, on January 25, 2006. Absent tolling, the limitations period would have expired on January 25, 2007.

During the one-year limitations period, Scott was entitled to statutory tolling under § 2244(d)(2) during the pendency of any "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida*, --- U.S. ----, ----, 130 S.Ct. 2549, 2554, 177 L.Ed.2d 130 (2010); *Allen v. Siebert*, 552 U.S. 3, 4, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007) (*per curiam* ); *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*[5]

Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely")*; Monroe v. Jackson*, 2009 WL

---

[4]The Sixth Circuit has held that motions for delayed appeal are not part of the direct appeal for purposes of 28 U.S.C. § 2244(d)(1) and that denial of such motions do not "retrigger" the AEDPA statute of limitations. *See DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006); *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001). However, in *Jimenez v. Quarterman*, 555 U.S. 113, 120, 129 S.Ct. 681 (2009), the Court held that "where a state court **grants** a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." *Id*. at 686 (emphasis added). Here, as Scott's motions to file a delayed appeal were granted by the state courts, his direct appeal was not final until January 24, 2006.

[5]An application for state habeas review is an application for state postconviction review or other collateral review within the meaning of the AEDPA. *See Abela v. Martin*, 348 F.3d 164, 170 (6th Cir. 2003), *overruled on other grounds as stated in Sanders v. Bobby*, 2008 U.S. Dist. LEXIS 7248 (N.D. Ohio 2008).

73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009).  A timely filed state postconviction petition, however, cannot serve to toll a statute of limitations which had already expired before the filing.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).  Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman*, 346 F.3d at 602 (citation omitted).  Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

"Whether a time limit is jurisdictional, an affirmative defense, or something in between, it is a 'condition to filing' ... [that] places a limit on how long a prisoner can wait before filing a postconviction petition."  *Allen*, 552 U.S. at 6.  The existence of certain exceptions to a timely filing requirement does not preclude a finding that a late petition was improperly filed.  *Pace*, 544 U.S. at 413.  As the Court explained in *Pace*:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id*.  Therefore, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Id*. at 414.

Respondent contends that Scott's AEDPA limitations period ran for 268 days until he filed the October 10, 2006 Motion to Vacate.  (Doc. Nos. 9 at 8-9; 9-1, Exh. 19.)  Scott filed a second motion to vacate on December 31, 2008.  (Doc. No 9-1, Exh. 24.)  Respondent asserts that these collateral motions remained "pending" in the state courts until the June 1, 2010, dismissal by the appellate court.  (Doc. No. 9-2, Exh. 31.)  He further asserts that because the Ohio Supreme Court does not permit the filing of a delayed appeal involving post-conviction relief pursuant to S.Ct. Prac. R. II, § 2(A)(4)(c), Scott's attempted delayed appeal did not toll

the AEDPA limitations period. (Doc. No. 9 at 8-9.) Therefore, he contends that the limitations period resumed running on June 2, 2010, until it expired ninety-seven days later, (365-268=97) on September 6, 2010. *Id.*

Scott's initial motion to vacate, however, was not "properly filed." (Doc. No. 9-1, Exh. 19.) It is well-settled that a state application for postconviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits. *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). Moreover, as the *Pace* Court explained:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Pace*, 544 U.S. at 413. Therefore, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Id.* at 414; *Allen*, 552 U.S. at 3-4*; Curry v. Warden, Ohio State Penitentiary*, 2011 WL 335665, *5-6 (S.D. Ohio Jan. 4. 2011) (A state postconviction petition, never ruled upon by the court, was deemed not "properly filed" for AEDPA purposes since it was not filed within 180 days after the filing of the trial transcript in the direct appeal.)

Pursuant to Ohio law, a trial court may treat a motion, regardless of its caption, as a petition for postconviction relief, if the motion, filed after direct appeal, claims a denial of a constitutional right, and seeks to render the final judgment void. *See State v. Smith*, 180 Ohio App.3d 684, 906 N.E.2d 1191 (9th Dist. Summit County, 2009) (petition was captioned "motion for resentencing"); *State v. Fulk*, 172 Ohio App.3d 635, 876 N.E.2d 983 (3rd Dist. Van Wert County 2007) (petition was captioned "motion for relief from judgment"). In Ohio, a state postconviction petition must be filed within 180 days from the date the trial transcript is filed with the state appellate court. O.R.C. § 2953.21(A)(2). Also, it is well-established in Ohio that

9

"[w]hen a trial court fails to rule upon a motion, it will be presumed that it was overruled." *Curry*, 2011 WL 335665 at *6 (*quoting Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 663 N.E.2d 1348, 1352 (Ohio Ct. App. 1995)) (and Ohio cases cited therein); *cf. State v. Kerney*, 1999 WL 239890, at *1 n.1 (Ohio Ct. App. Apr. 14, 1999) (unpublished) (noting that because there was no indication in the record that the trial court ruled on the defendant's post-conviction motion to withdraw his guilty plea, the motion was "presumed to have been denied.")

In Scott's initial motion to vacate dated October 10, 2006, he argued that the plea agreement was "void at common law" because the prosecutor, with "malicious intent," committed a fraud by convincing the court to run his sentences consecutively when they were allied offenses. (Doc. No. 9-1, Exh. 19.) He also raised issues about his consecutive sentence under *Blakely*, 542 U.S. 296, *Booker*, 543 U.S. 220 and *Apprendi*, 530 U.S. 466. Because Scott's motion raises a denial of a constitutional right and seeks to render the final judgment void, it is a postconviction petition. As such, the Court finds it was untimely and, therefore, not properly filed. The trial transcript was lodged in the state appellate court on March 15, 2004. (Doc. No. 9-2, Exh. 48.) Scott's motion, filed on October 10, 2006, was well after the 180 day deadline.[6] As this motion was untimely filed, the statute of limitations was not tolled. This reasoning is also applicable to Scott's second collateral motion filed on December 31, 2008.

None of Scott's other collateral actions provide statutory tolling. The 26(B) Motion did not toll because it was completed on June 15, 2005, before his conviction became final. (Exh. 44.) The 60(B) Motion was deemed untimely by the state courts. (Exh. 35.) Regarding Scott's pending post-conviction filed with the Ohio Supreme Court on March 3, 2011, it was filed after the expiration of the AEDPA limitations period. (Exh. 39.) As there was no tolling, Scott's limitations period expired on January 25, 2007.

Alternatively, if Respondent's argument that such motion remained pending in the state court until the June 1, 2010 dismissal of Scott's second motion to vacate is accepted, the

---

[6]Pursuant to Ohio law, the motion was presumed to be overruled as there was no ruling by the trial court. *See Georgeoff*, 105 Ohio App.3d at 378.

10

limitations period would have resumed running on June 2, 2010, until its expiration ninety-seven days later, on September 6, 2010.

Either way, because Scott's Petition was not signed until November 22, 2010, it is time-barred. Scott is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2).

**B.     Equitable Tolling**

Scott raised an equitable tolling argument in his Traverse asking the Court to hold an evidentiary hearing in order to determine if such tolling is applicable. (Doc. No. 20 at 11.) Scott also claims that he is "actually innocent of the factual predicate." *Id*.

In order to be entitled to equitable tolling, Scott must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.*; *see also Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Moreover, Scott has the burden of proving that equitable tolling is applicable. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Sixth Circuit requires the court to consider the following factors in determining whether the statute of limitations governing federal habeas petitions should be equitably tolled:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Sherwood*, 579 F.3d at 588; *Dunlap*, 250 F.3d at 1008 (*citing Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). Under this test, the absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap*, 250 F.3d at 1009; *Andrews*, 851 F.2d at 151 (*citing Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). The absence of prejudice may only be considered when other factors of the test are met. *Id.*

Here, Scott contends that he is "innocent of the element of the crime." (Doc. No. 20 at 11.) He further contends that his numerous filings demonstrate diligence in pursuing his rights. (Doc. No. 20 at 12.) His arguments, without more, do not demonstrate that some extraordinary circumstance prevented him from filing a timely Petition. He also has not demonstrated that he

11

lacked notice or constructive knowledge of the one-year filing requirement.

Lastly, Scott has not made a sufficient showing of actual innocence to warrant an exception to the applicable limitations period. "Where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). To establish a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Court notes that actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should remain rare and "only be applied in the 'extraordinary case.'" *Schlup*, 513 U.S. at 321.

In the instant case, Scott has alleged actual innocence, but has not offered any new evidence to support such a conclusion. Scott has alleged only that the evidence is "devoid of proper eye witness identification[ ] and/or whether he could be found guilty under the statute." (Doc. No. 20 at 11.) More importantly, Scott pled guilty. Since Scott's conviction stems from his guilty plea rather than from a conviction obtained after trial, he may only challenge whether his guilty plea was knowing, intelligent, and voluntary. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. at 621(*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). Thus the only attack Scott can raise against his plea is whether it was knowing, intelligent, and voluntary.

Scott's mere assertion that his plea was involuntary does not render it so. "When considering a petitioner's assertion that he is innocent, 'the self-inculpatory statements he made under oath at his plea allocution carry a strong presumption of verity, and the court, in

12

reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant.'" *Logan v. Booker*, 2007 WL 2225887, *4 (E.D. Mich. Aug. 1, 2007) (*quoting Urena v. People of State of New York*, 160 F.Supp.2d 606, 610 (S.D.N.Y. 2001) (*quoting United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997)); *see also Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) (holding that the mere assertion of innocence, absent support from the record, is insufficient to overturn a guilty plea). Scott, in open court, stated he understood the terms of his plea agreement, that he was entering the plea of his own free will, and that he was, in fact, guilty of the crimes. (Doc. No. 9-2, Exh. 55 at 192-198.) There is a strong presumption that Scott's statements made at the hearing were truthful.

In sum, the Court concludes that under the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the petition is time-barred and should be dismissed with prejudice. Neither the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) nor equitable tolling principles apply to toll the limitations period in the instant case. Finally, Scott has not presented a proper actual innocence claim. For the same reasons, Scott's motion for leave to amend his Petition should be denied.

### III. Conclusion

For the foregoing reasons, it is recommended that Scott's Motion for Leave to Amend his Petition (Doc. No. 18) be denied and the Petition be dismissed as time-barred.

s/ *Greg White*<br>
United States Magistrate Judge

Date:  January 6, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**